PD-0828-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/2/2015 12:07:27 PM
Accepted 7/2/2015 4:23:14 PM
ABEL ACOSTA
CLERK

No. _____

IN THE COURT OF CRIMINAL APPEALS
OF TEXAS

**THE STATE OF TEXAS,**
PETITIONER,

V.

**JAVIER RODRIGUEZ,**
RESPONDENT.

PETITION IN CAUSE NO. 11-CR-3843-G, FROM THE
319TH DISTRICT COURT OF NUECES COUNTY, TEXAS,
AND CAUSE NO. 13-13-00335-CR, IN THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS.

# PETITION FOR DISCRETIONARY REVIEW

Douglas K. Norman
State Bar No. 15078900
Assistant District Attorney
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)
douglas.norman@nuecesco.com

Attorney for Petitioner

FILED IN
COURT OF CRIMINAL APPEALS

July 2, 2015

ABEL ACOSTA, CLERK

# IDENTITY OF JUDGE, PARTIES AND COUNSEL

Trial Judge:
    Hon. Thomas F. Greenwell
    Judge, 319th District Court
    901 Leopard St., Corpus Christi, TX 78401

State's Trial and Appellate Attorneys:
    Douglas K. Norman
    State Bar No. 15078900
    Clarissa Fernandez
    State Bar No. 24068964
    Assistant District Attorneys
    901 Leopard, Room 206
    Corpus Christi, Texas 78401
    (361) 888-0410

Appellee:
    Javier Rodriguez

Appellee's Trial Attorneys
    Hector Gonzalez
    State Bar No. 08127100
    Eric Perkins
    State Bar No. 15785060
    2818 S. Port Ave., Corpus Christi, TX 78405

Appellee's Appellate Attorney:
    Mr. Donald B. Edwards
    State Bar No. 06469050
    P.O. Box 3302, Corpus Christi, Texas 78463
    (361) 887-7007
    mxlplk@swbell.net

# TABLE OF CONTENTS

IDENTITY OF JUDGE, PARTIES AND COUNSEL ............................... i

INDEX OF AUTHORITIES ........................................................ iv

STATEMENT REGARDING ORAL ARGUMENT ................................ 1

STATEMENT OF THE CASE ..................................................... 2

STATEMENT OF PROCEDURAL HISTORY ...................................... 2

QUESTIONS PRESENTED FOR REVIEW ....................................... 2

ARGUMENT ....................................................................... 3

I.  Whether the implied consent and mandatory blood draw provisions of the Texas Transportation Code are a constitutionally valid alternative to the warrant requirement. ....................................... 3

II.  Whether a suspect's failure to explicitly refuse a request to submit to a blood draw prevents the arresting officer from proceeding under Section 724.012 to obtain a blood sample pursuant to statutorily implied consent? ....................................................................... 4

III.  Whether, in order to show exigent circumstances, an investigating officer must anticipate that he will obtain probable cause for a blood warrant prior to obtaining all of the facts necessary to obtain such a warrant; or whether exigent circumstances is determined as of the time the facts known to the officer mature into probable cause for the blood warrant? ........................................................................ 7

IV.  Whether the Thirteenth Court of Appeals erred in considering the subjective belief of the arresting officer that he did not need a warrant, in its determination as to whether exigent circumstances justified the officer in obtaining a blood sample without a warrant? .......................... 11

**V.  Alternatively, to the extent that fact questions were raised at the suppression hearing dependent upon the trial court's belief in the credibility of the witnesses and evidence, the Thirteenth Court of Appeals erred in refusing to remand to the trial court for findings of fact and conclusions of law.**......................................................................... **12**

**PRAYER FOR RELIEF**.............................................................. **15**

**RULE 9.4 (i) CERTIFICATION**.................................................. **16**

**CERTIFICATE OF SERVICE** ................................................... **16**

**APPENDICES:**
1.  **Thirteenth Court of Appeals Opinion.**
2.  **Electronic Docket Sheet.**
3.  **Order Denying Motion to Reconsider.**

# INDEX OF AUTHORITIES

## CASE LAW

*Brigham City, Utah v. Stuart*, 547 U.S. 398, 126 S. Ct. 1943 (2006). ......... 12

*Brimage v. State*, 918 S.W.2d 466 (Tex. Crim. App. 1994). ........................ 11

*Colburn v. State*, 966 S.W.2d 511 (Tex. Crim. App. 1998). ........................ 11

*State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006) ...................... 13, 14

*Garcia v. State*, 15 S.W.3d 533 (Tex. Crim. App. 2000). ........................... 12

*Kentucky v. King*, 131 S. Ct. 1849 (2011). .............................................. 8, 12

*Missouri v. McNeely*, 133 S. Ct. 1552 (2013). ............................................. 10

*Torres v. State*, 182 S.W.3d 899 (Tex. Crim. App. 2005). ............................. 9

## STATUTES, RULES AND OTHER AUTHORITIES

Tex. Transp. Code § 724.011. ......................................................................... 4

Tex. Transp. Code § 724.012. ......................................................................... 5

Tex. Transp. Code § 724.013. ......................................................................... 5

Tex. R. App. P. 44.4. ...................................................................................... 14

Tex. R. App. P. 66.3. ......................................................................................... 4

No. _____

| | |
|---|---|
| **THE STATE OF TEXAS,** | **\| IN THE** |
| **Petitioner,** | **\|** |
| | **\|** |
| **v.** | **\| COURT OF CRIMINAL APPEALS** |
| | **\|** |
| **JAVIER RODRIGUEZ,** | **\|** |
| **Respondent.** | **\| OF TEXAS** |

## STATE'S PETITION FOR DISCRETIONARY REVIEW

## TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through the District Attorney for the 105th Judicial District of Texas, and respectfully urges this Court to grant discretionary review of the above named cause for the reasons that follow:

### STATEMENT REGARDING ORAL ARGUMENT

The State believes that oral argument would be helpful to the determination of the present appeal because, in addition to the issue already under consideration before this Court in the *Villarreal* case cited herein, the State raises an unresolved question concerning the interpretation of the implied consent/mandatory draw statute, and other questions concerning the duty of police to anticipate the need for a warrant before obtaining probable cause, and the objective nature of the determination of exigent circumstances.

1

## STATEMENT OF THE CASE

Javier Rodriguez was indicted for three counts of intoxication assault arising out of the same incident. (Clerk's Record p. 5) He filed a motion to suppress a blood test showing the level of his intoxication (Clerk's Record p. 393), which the trial court granted by a written order signed on May 28, 2013. (Clerk's Record p. 402) The present petition arises out of a State's Appeal from that order, which the State perfected by timely filed notice of appeal on June 6, 2013. (Clerk's Record p. 405)

## STATEMENT OF PROCEDURAL HISTORY

A panel of the Thirteenth Court of Appeals issued an unpublished memorandum opinion on June 18, 2015, affirming the trial court's order granting the motion to suppress. (See Appendix 1) The State has not filed a motion for rehearing.

## QUESTIONS PRESENTED FOR REVIEW

**I. Whether the implied consent and mandatory blood draw provisions of the Texas Transportation Code are a constitutionally valid alternative to the warrant requirement.**

**II. Whether a suspect's failure to explicitly refuse a request to submit to a blood draw prevents the arresting officer from proceeding under Section 724.012 to obtain a blood sample pursuant to statutorily implied consent?**

**III. Whether, in order to show exigent circumstances, an investigating officer must anticipate that he will obtain probable cause for a blood warrant prior to obtaining all of the facts necessary to obtain such a warrant; or whether exigent circumstances is determined as of the time the facts known to the officer mature into probable cause for the blood warrant?**

**IV. Whether the Thirteenth Court of Appeals erred in considering the subjective belief of the arresting officer that he did not need a warrant, in its determination as to whether exigent circumstances justified the officer in obtaining a blood sample without a warrant?**

**V. Alternatively, to the extent that fact questions were raised at the suppression hearing dependent upon the trial court's belief in the credibility of the witnesses and evidence, the Thirteenth Court of Appeals erred in refusing to remand to the trial court for findings of fact and conclusions of law.**

## ARGUMENT

**I. Whether the implied consent and mandatory blood draw provisions of the Texas Transportation Code are a constitutionally valid alternative to the warrant requirement.**

The issue is presently before this Court in *State v. Villarreal*, PD-0306-14 (Tex. Crim. App, November 26, 2014), which, although initially decided against the State, is now pending on rehearing. The State respectfully requests that cases like the present one, with similar or identical issues, be held under consideration until *Villarreal* does become final and binding. Accordingly, the State continues to argue that the implied consent and mandatory blood draw provisions of the Texas Transportation Code are a constitutionally valid alternative to the warrant requirement, and that the

decision of the Thirteenth Court of Appeals to the contrary decides an important question of federal law that has not been, but should be, settled by the Court of Criminal Appeals. *See* Tex. R. App. P. 66.3 (b).

**II. Whether a suspect's failure to explicitly refuse a request to submit to a blood draw prevents the arresting officer from proceeding under Section 724.012 to obtain a blood sample pursuant to statutorily implied consent?**

At the end of its opinion, the Thirteenth Court of Appeals concluded, among other things, that the Implied Consent/Mandatory Draw statute did not apply in the present case for the following reason:

> Section 724.012 requires that "*the person refuses the officer's request* to submit to the taking of a specimen voluntarily" prior to the mandatory blood draw. TEX. TRANSP. CODE ANN. § 724.012 (emphasis added). Therefore, as a matter of law, Officer Jordan did not properly acquire appellee's blood sample pursuant to section 724.012.

(13th Court of Appeals Opinion pp. 18-19)

However, the Implied Consent/Mandatory Draw provisions of the Texas Transportation Code generally consist of the following three statutes, which should be read together:

> Sec. 724.011. CONSENT TO TAKING OF SPECIMEN.
> (a) If a person is arrested for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle in a public place, or a watercraft, while intoxicated, …, the person is deemed to have consented, subject to this chapter, to submit to the taking of one or more specimens of the person's breath or blood ….

Sec. 724.012.  TAKING OF SPECIMEN.
(a)  One or more specimens of a person's breath or blood may be taken if the person is arrested and at the request of a peace officer having reasonable grounds to believe the person:

> (1)  while intoxicated was operating a motor vehicle in a public place, or a watercraft;  …

(b)   A peace officer shall require the taking of a specimen of the person's breath or blood under any of the following circumstances if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle or a watercraft and the person refuses the officer's request to submit to the taking of a specimen voluntarily:  [Mandatory Draw Circumstances.]

Sec. 724.013.     PROHIBITION  ON  TAKING  SPECIMEN  IF PERSON REFUSES;  EXCEPTION.
Except as provided by Section 724.012(b), a specimen may not be taken if a person refuses to submit to the taking of a specimen designated by a peace officer.

When properly read as a whole, it is clear that the situation in which a suspect neither explicitly submits nor explicitly refuses to submit to a blood draw under Section 724.012 does not, as the Thirteenth Court of Appeals seems to assume, defeat a compelled draw, but merely shifts it from the purview of Subsection (b), to that of Subsection (a).

Specifically, Section 724.011 is the operative statute that deems consent for the blood draw by virtue of the underlying DWI arrest.[1]  Section

---

[1]     The Thirteenth Court of Appeals concluded that the State failed to preserve its reliance on the implied consent provisions of Section 724.011, as follows:

> At the suppression hearing, the State neither mentioned the implied consent statute it cites on appeal nor argued that appellee impliedly

5

724.013 partially removes this deemed consent only if the suspect "refuses to submit." Accordingly, if the suspect does not refuse to submit, deemed consent remains intact and blood may be drawn even upon a simple DWI arrest under Section 724.012(a). On the other hand, if the suspect does affirmatively "refuse to submit," blood may only be drawn if he fits within the narrower category of a Section 724.012(b) DWI arrest under aggravating circumstances.

The Thirteenth Court of Appeals erred in piecemealing the statute and assuming that the suspect's refusal to submit defeated the officer's ability to compel a warrantless blood draw.

---

consented to the warrantless blood draw by driving on the roadway or obtaining a driver's license as it now argues.
(13th Court of Appeals Opinion p. 16)
However, the fact that the State may never have mentioned Section 724.011 by name does not detract from the fact the its whole argument at the suppression hearing was based on the implied consent/mandatory draw provision included within Sections 724.011 through 724.013, and both the parties and the trial court understood this from the arguments made and the pleadings on file. (Reporter's Record pp. 6-7) Rodriguez's Motion to Suppress Blood Test even presumes that Section 724.011 deemed consent applies, but initially attempts to avoid its application by alleging that he was illegally detained and not arrested at the time. (Clerk's Record p. 393)

6

**III. Whether, in order to show exigent circumstances, an investigating officer must anticipate that he will obtain probable cause for a blood warrant prior to obtaining all of the facts necessary to obtain such a warrant; or whether exigent circumstances is determined as of the time the facts known to the officer mature into probable cause for the blood warrant?**

The Thirteenth Court of Appeals suggests by its opinion that it was determining exigent circumstances as of the time that the officer arrived at the scene of the accident, which in turn suggests that the officer in question had some duty to anticipate that he would develop probable cause and make arrangements to obtain a warrant at that time.

In particular, the Thirteenth Court of Appeals devised the following broad generalization from the *McNeely* opinion:

> Moreover, the United States Supreme Court has stated that if an officer can take steps to secure a warrant while the suspect is being transported to a hospital by another officer, there would be no plausible justification for an exception to the warrant requirement. *McNeely*, 133 S.Ct. at 1561.

(13th Court of Appeals Opinion p. 14) Yet, the Supreme Court never suggested in *McNeely* that the officer's duty to take steps to secure a warrant begins before he has developed probable cause to believe that the suspect was intoxicated. Other Supreme Court cases suggest that the duty to seek a warrant may not even occur until after the officer has developed something more than the bare minimum of facts arguably necessary to show probable cause.

7

In *Kentucky v. King*, the Supreme Court held that police, when they are otherwise acting lawfully, may be excused from the warrant requirement even when their own actions create the exigent circumstances that make getting a warrant impractical. 131 S. Ct. 1849, 1857-61 (2011). Therein the Supreme Court examined circumstances in which a police-created exigency occurs even after facts sufficient to show probable cause have been developed, and stated that "[t]here are many entirely proper reasons why police may not want to seek a search warrant as soon as the bare minimum of evidence needed to establish probable cause is acquired." *Id.* at 1860. Among other reasons, the Supreme Court noted that "the police may want to ask an occupant of the premises for consent to search because doing so is simpler, faster, and less burdensome than applying for a warrant," and that "law enforcement officers may wish to obtain more evidence before submitting what might otherwise be considered a marginal warrant application." *Id.* The Supreme Court concluded that "[f]aulting the police for failing to apply for a search warrant at the earliest possible time after obtaining probable cause imposes a duty that is nowhere to be found in the Constitution." *Id*. at 1861.

With regard to a DWI investigation, the fact that the suspect caused an accident, and inarticulate suspicions that he might have been intoxicated at

the time, are insufficient to show probable cause for a DWI arrest or blood search. *See Torres v. State*, 182 S.W.3d 899, 903 (Tex. Crim. App. 2005).

In the present case, while at the scene and before going to the hospital, Officer Jordan had nothing more than a suspicion that Rodriguez might be intoxicated. (Reporter's Record p. 13) Only after arriving at the hospital, smelling alcohol on Rodriguez's breath, and hearing his slurred speech, did Officer Jordan feel confident that he had probable cause to arrest Rodriguez for DWI/Intoxication Assault, and therefore probable cause to support a blood warrant as well. (Reporter's Record pp. 15-17, 29, 41)

In addition, for the same reasons set forth in *King*, even if Officer Jordan had the bare minimum for probable cause at the scene of the accident, it would have been objectively reasonable for him to delay seeking a warrant until he had an opportunity to speak to Rodriguez and observe him more closely at the hospital, and perhaps even make getting a warrant unnecessary by virtue of his consent to a blood draw.

Accordingly, the Thirteenth Court of Appeals clearly misapplied its calculation of delay by assuming that Officer Jordan should have attempted to obtain a warrant at the scene of the accident, rather than later at the hospital when the facts known to Officer Jordan reached the level of probable cause.

Moreover, concerning the relevant period of delay, the record suggests that there was little or no delay in drawing Rodriguez's blood once Officer Jordan smelled alcohol on his breath and placed him under arrest. (Reporter's Record pp. 18, 37) However, both Officer Jordan and Officer Gary Williams, who was assigned to the DWI Enforcement Unit and whose primary function was DWI investigation (Reporter's Record pp. 95-96), testified to the lengthy process for obtaining a warrant and gave estimates of the delay at generally between an hour and an hour and a half. (Reporter's Record pp. 21, 66, 100-01, 112-13)

In *McNeely*, the Supreme Court's discussion concerning the lack of exigent circumstances was generally premised upon "a situation in which the warrant process will not significantly increase the delay before the blood test is conducted." *Missouri v. McNeely*, 133 S. Ct. 1552, 1561 (2013). The Supreme Court specifically acknowledged that "exigent circumstances justifying a warrantless blood sample may arise in the regular course of law enforcement due to delays from the warrant application process." Id. at 1563.

Had the Thirteenth Court of Appeals applied the correct calculation of delay at one hour to an hour and a half, this clearly would have been a

significant enough delay under the circumstances to show loss of evidence and to justify the warrantless blood draw.

**IV. Whether the Thirteenth Court of Appeals erred in considering the subjective belief of the arresting officer that he did not need a warrant, in its determination as to whether exigent circumstances justified the officer in obtaining a blood sample without a warrant?**

In its opinion, the Thirteenth Court of Appeals gave weight to the trial court's supposed "finding" that "Officer Jordan's only basis for drawing appellee's blood without first obtaining a warrant was that section 724.012 required him to take a blood sample without appellee's consent and without the necessity of getting a warrant." (13th Court of Appeals Opinion p. 12) In doing so, the Court of Appeals neglected the objective facts showing exigent circumstances and improperly looked to the arresting officer's subjective motivation and justification for the warrantless blood draw.

When examining exigent circumstances to determine whether a warrantless search is justified, this Court has stated that it uses an objective standard of reasonableness, taking into account the facts and circumstances known to the police at the time of the search. *See Colburn v. State*, 966 S.W.2d 511, 519 (Tex. Crim. App. 1998); *Brimage v. State*, 918 S.W.2d 466, 501 (Tex. Crim. App. 1994). Likewise, the Supreme Court has consistently applied an objective standard, rejecting any approach that looks to the individual officer's state of mind or motivation at the time of the

11

search.  *See Brigham City, Utah v. Stuart*, 547 U.S. 398, 404-05, 126 S. Ct. 1943 (2006); *see also Kentucky v. King*, 131 S. Ct. 1849, 1859 (2011) (quoting *Brigham City* and noting the repeated rejection of a subjective approach to exigent circumstances, which instead depends upon whether "the circumstances, viewed *objectively*, justify the action").

For this reason, as well as the others already noted, the Thirteenth Court of Appeals erred in rejecting exigent circumstances as an alternate justification for obtaining a blood sample without a warrant in the present case.

**V.  Alternatively, to the extent that fact questions were raised at the suppression hearing dependent upon the trial court's belief in the credibility of the witnesses and evidence, the Thirteenth Court of Appeals erred in refusing to remand to the trial court for findings of fact and conclusions of law.**

Following the trial court's order granting a motion to suppress, signed on May 28, 2013 (CR p. 402), the State timely filed a request for findings and conclusions on June 7, 2013 (CR p. 434), and a notice of past due findings on July 5, 2013.  (CR p.444)[2]

---

[2] The State would note that the judge who presided at the suppression hearing, the Honorable Thomas F. Greenwell, died suddenly on July 15, 2013, such that it is no longer possible for him to render findings and conclusions.  This leaves open the question of whether the appropriate remedy is for the present judge to make findings based on the paper record, or for that judge to rehear the matter and thereafter render appropriate findings and conclusions, which may be the more appropriate remedy.  *See Garcia v. State*, 15 S.W.3d 533 (Tex. Crim. App. 2000).  However,

On August 6, 2013, the State filed in the Thirteenth Court of Appeals a motion to abate the appeal and remand for necessary findings and conclusions to be made, but the Court denied that motion on August 22, 2013. On August 27, 2013, the State asked the Court to reconsider its denial of the motion to abate and remand, but the Court denied that motion as well on October 2, 2013, and decided the present appeal based solely on the trial judge's comments at the suppression hearing. (See Appendices 2 & 3[3]; 13th Court of Appeals Opinion p. 5 n.1)

In *State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006), this Court explained the necessity for findings in connection with the trial court's granting of a motion to suppress, as follows:

> The refusal of trial courts to enter findings of fact when timely requested by the State leaves appellate courts with nothing to review except a one-word ruling and forces the courts of appeals to make assumptions about the trial court's ruling. The ruling could be based on a mistake of law, on the trial court's disbelief of the testimony presented, or even on a clerical error. There is the possibility that we are basing our entire appellate review on the wrong word being circled. We agree with Judge Womack's concurring opinion in *Ross* that courts of appeals should not be forced to make assumptions (or outright guesses) about a trial court's ruling on a motion to suppress evidence. *De novo* review of such a ruling does not resolve this issue because the trial court is still in the best position to judge the

whichever option may be proper or more appropriate, the State is clearly entitled to findings and to have them made by the trial court in some manner.

[3] Although post-card notice was received concerning the Court's denial of the motion to reconsider, no such notice was received concerning the denial of the original motion to abate and remand, which is reflected only on the Court's electronic docket and in footnote 1 of the opinion.

credibility and demeanor of the witnesses at a pretrial suppression hearing. Instead, the proper solution to this problem is to require the trial courts to enter findings of fact and conclusions of law when ruling on a motion to suppress evidence.

Id. at 698. Accordingly, *Cullen* set forth a requirement that:

upon the request of the losing party on a motion to suppress evidence, the trial court shall state its essential findings. By "essential findings," we mean that the trial court must make findings of fact and conclusions of law adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts.

*Id.* at 699.

The Texas Rules of Appellate Procedure provide, in pertinent part, as follows:

(a) *Generally.* A court of appeals <u>must not</u> affirm or reverse a judgment or dismiss an appeal if:
(1) the trial court's erroneous action or failure or refusal to act prevents the proper presentation of a case to the court of appeals; and
(2) the trial court can correct its action or failure to act.
(b) *Court of appeals direction if error remediable.* If the circumstances described in (a) exist, the court of appeals <u>must</u> direct the trial court to correct the error. The court of appeals will then proceed as if the erroneous action or failure to act had not occurred.

Tex. R. App. P. 44.4 (emphasis added).

Accordingly, Rule 44.4 is mandatory and not permissive concerning the duty of the appellate court to direct the trial court to correct errors of the present nature. *See Cullen*, 195 S.W.3d at 698 (quoting Rule 44.4 as its

14

authority for requiring the trial court to make findings and, by extension, requiring the appellate court to abate and remand for such findings).

In the present case, the Thirteenth Court of Appeals had a clear duty to abate and remand for the trial court to make findings and conclusions, and specifically credibility determinations about the testimony and evidence it received at the suppression hearing.

## PRAYER FOR RELIEF

For the foregoing reasons, the State requests that the Court: grant this petition for discretionary review; set this case for submission with oral argument; and, after submission, reverse the judgment of the Court of Appeals and remand to that Court either to enter an order vacating the trial court's suppression order, or to remand to the trial court to make findings and conclusions, and thereafter to consider the present appeal based on those findings and conclusions.

Respectfully submitted,

/s/ *Douglas K. Norman*

_____
Douglas K. Norman
State Bar No. 15078900
Assistant District Attorney
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)
douglas.norman@co.nueces.tx.us

15

## RULE 9.4 (i) CERTIFICATION

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this petition, excluding those matters listed in Rule 9.4(i)(1), is 3,104.

/s/ *Douglas K. Norman*
_____
Douglas K. Norman

## CERTIFICATE OF SERVICE

This is to certify that, pursuant to Tex. R. App. P. 6.3 (a), copies of this petition for discretionary review were e-mailed on July 2, 2015, to Respondent's attorney, Mr. Donald B. Edwards, and to the State Prosecuting Attorney.

/s/ *Douglas K. Norman*
_____
Douglas K. Norman

# APPENDIX 1.
# Thirteenth Court of Appeals Opinion.



NUMBER 13-13-00335-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**THE STATE OF TEXAS,**                                                      **Appellant,**

**v.**

**JAVIER RODRIGUEZ,**                                                       **Appellee.**

---

**On appeal from the 319th District Court
of Nueces County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Longoria
Memorandum Opinion by Chief Justice Valdez**

By one issue, the State appeals the trial court's granting of appellee Javier Rodriguez's motion to suppress. We affirm.

## I.    BACKGROUND

After being involved in a multi-car accident where he and others were injured, appellant was arrested for driving while intoxicated.  A blood sample was taken from appellee.  Appellee filed a motion to suppress the test results of the blood sample, challenging the constitutionality of section 724.012 of the Texas Transportation Code, the mandatory blood draw statute.  *See* TEX. TRANSP. CODE ANN. § 724.012(b) (West, Westlaw through 2013 3d C.S.).

At the hearing on appellee's motion to suppress, Officer Andrew Jordan testified that on August 4, 2011, he arrived at the scene of a multi-car accident in Corpus Christi, Texas, and he noticed appellee trapped in his vehicle bleeding and in need of assistance. According to Officer Jordan, several people from the other cars were being transported to the hospital and he was told "that there were substantial injuries."  Appellee was also transported to the hospital.  Officer Jordan said that at the hospital, after smelling the odor of an alcoholic beverage in appellee's hospital room, he placed appellee under arrest and instructed a phlebotomist to draw appellee's blood.  Officer Jordan testified that it would have taken between an hour and 90 minutes to get a warrant but that he never sought a search warrant.  Officer Jordan stated that he ordered the blood draw pursuant to the mandatory blood draw statute.  *See id.*  Officer Jordan testified that he did not ask appellee whether or not he consented to the blood draw, but "I read the form [that stated appellee's rights] and then I took the—I had the phlebotomist draw the blood for the mandatory."

At the suppression hearing, the evidence established that Officer Jordan had not obtained a warrant to acquire appellee's blood sample and that he relied solely on the

2

mandatory blood draw statute. The State argued that appellee impliedly consented to the blood draw by, among other things, remaining silent when the blood was drawn. The State further argued that section 724.012 is an exception to the warrant requirement and in the alternative, exigent circumstances existed. In response to the State's argument that there is implied consent in this case because appellee allowed the blood to be drawn and remained silent, appellee's trial counsel stated:

> And we certainly have no refusal if that were the case, but I would ask the Court to rely on the record. I think that was well developed through Officer Jordan, that the prosecutor suggested that [appellee did] not mov[e] [his] arm. . . . That Officer Jordan never considered consent [at] issue, that he simply looked right over that and the document speaks for itself, Your Honor. We got the exhibit here that he answered my direct question on. Consent nor refusal was an issue, he simply put it in front of the—read it to him, checked off mandatory, indicated no consent nor refusal [of] consent. And then moved on.

> Again, the thought among [Corpus Christi Police Department] officers, Judge, is that a warrant is not an issue in a case like this, they have developed their own interpretations of 724.012(B), and they are going to stick with that regardless of what 724.012(B) says.

Regarding whether appellee consented to the blood draw, the State responded that a suspect may not simply stay mute and then argue that neither consent nor refusal occurred; thus, by staying quiet, appellee consented. The State did not specifically respond to appellee's argument that Officer Jordan had not first acquired appellee's refusal for a specimen. And the prosecutor stated, "there was no indication that Mr.—the defendant in this case, the suspect, refused or in anyway state[d] he refused to consent." Thus, the State's argument was that appellee had not refused to provide a specimen because he had consented by, among other things, staying mute. The trial judge stated: "I think there has to be some sort of affirmative consent to say that somebody consented in that situation. So I would find that there is no consent."

3

The parties then discussed the application of *Missouri v. McNeely*, which the trial judge believed prohibits the State from acquiring a blood draw without a warrant or exigent circumstances. *See Missouri v. McNeely*, __ U.S. __, 133 S.Ct. 1552 (2013). The trial judge explained that under *McNeely*, when an officer is making a determination of whether to take a blood draw because there are exigent circumstances, the officer is required to make a fact-intensive analysis based on the circumstances and that in this case Officer Jordan admitted he had only relied on the blood draw statute and that he did not engage in any such analysis. It is clear from the record that the trial court did not believe that Officer Jordan made any exigent circumstances inquiry because Officer Jordan testified that he could rely on the statute alone and that he was not required to obtain a warrant if he relied on the statute.

The State argued that *McNeely* is very narrow and that the Supreme Court did not reach the issue of whether a mandatory blood draw statute can serve as an exception to the warrant requirement if properly phrased. The State asserted that the additional exigency factors as mentioned in *Schmerber*, "are directly imbedded into the mandatory blood law. For example, a crash with injury and a child passenger. These exigent factors were already thought of by our legislature and put into the mandatory blood law. That was the purpose behind some of those mandatory blood draws." *See Schmerber v. State of California*, 384 U.S. 757, 770 (1966).

The State argued in the alternative that the evidence presented established that there was an exigency in this case despite Officer Jordan's testimony that he relied on the statute alone. The trial judge stated that he did not think that the State had proven that, in this particular case, exigent circumstances existed that justified the warrantless

4

blood draw because Officer Jordan did not think he needed a warrant and testified he relied solely on section 724.012(b). The judge explained, "And that's the problem, we are trying to go back and recreate an emergency in a situation where the officer didn't even try [to get a warrant] because he was relying on the mandatory [blood draw] statute. So the State is not going to have anything to support an emergency." Finally, the State argued that Officer Jordan's good faith reliance on the statute required that the trial court deny appellee's motion to suppress. The trial court granted the motion but did not state its reasons in the order and did not enter any findings and conclusions. The State filed a request for findings of fact and conclusions of law, but no findings and conclusions were filed before the death of the judge in this case.[1] This appeal followed.

## II.    STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's decision on a motion to suppress for an abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). Under our abuse of discretion analysis, we use a bifurcated standard. *State v. Ross*, 32 S.W.3d 853, 856

---

[1] After the Honorable Thomas F. Greenwell, the judge who granted appellee's motion to suppress, passed away, the State filed a motion with this Court requesting that we abate this appeal and remand it for a new motion to suppress hearing with a new judge. The State argued that "[w]ithout explicit findings concerning the credibility of the witnesses who testified to the difficulty they would have had in obtaining a warrant, all inferences would run against the State concerning the factual basis for the exigency." We denied the motion. The State filed a motion to reconsider our ruling asking that we remand the case for findings of fact and conclusions of law to be drafted in the alternative. We denied that motion.

Because the pertinent facts are undisputed and Judge Greenwell made a pertinent oral finding on the record, and Judge Greenwell orally stated the reasons for his ruling, we conclude that written findings of fact and conclusions of law are unnecessary for our disposition of the issue presented here. *See Francis v. State*, 428 S.W.3d 850, 855 n.10 (Tex. Crim. App. 2014) ("In the context of motions to suppress, we have further held that '[a]ppellate courts may review the legal significance of undisputed facts de novo.'"); *State v. Cullen*, 195 S.W.3d 696, 699–700 (Tex. Crim. App. 2006) ("[W]hile the appealing party must file its notice of appeal in accordance with the applicable statutes and rules, the trial court has 20 days from the date of its ruling in which to file findings of fact if it has not already made oral findings on the record."). Moreover, as explained further below, the credibility of the witnesses' testimony does not appear to have been at issue, and Judge Greenwell made his decision as a matter of law. Thus, we have no indication that Judge Greenwell disbelieved the testimony, and our disposition would not change even if he had.

5

(Tex. Crim. App. 2000) (en banc) (citing *Guzman v. State*, 955 S.W.2d 85, 88 (Tex. Crim. App. 1997) (en banc)); *see also Urbina v. State*, No. 13–08–00562–CR, 2010 WL 3279390, at *1 (Tex. App.—Corpus Christi Aug.19, 2010, pet. ref'd) (mem. op., not designated for publication). We give almost total deference to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Guzma*n, 995 S.W.2d at 89). We "review de novo 'mixed questions of law and fact' that do not depend upon credibility and demeanor." *Id.* (quoting *Montanez v. State*, 195 S.W.3d 101, 107 (Tex. Crim. App. 2006)); *Guzman*, 995 S.W.2d at 89.

"When a trial court makes explicit fact findings, the appellate court determines whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings." *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We will uphold the trial court's ruling under any applicable theory of law supported by the facts of the case whether we infer the fact findings or consider express findings. *Alford v. State*, 400 S.W.3d 924, 929 (Tex. Crim. App. 2013). "Similarly, regardless of whether the trial court has made express conclusions of law, we uphold the trial court's ruling under any theory supported by the facts because an appellate court reviews conclusions of law de novo." *Id.* Under our de novo review, we are not required to defer to a trial court's particular theory. *Id.* This "rule holds true even if the trial court gave the wrong reason for its ruling." *Armendariz v. State*, 123 S.W.3d 401, 403 (Tex. Crim. App. 2003).

"To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police

6

conduct." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). "A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant." *Id.*; *see also Kelly*, 204 S.W.3d at 819 n.22 (noting that in the context of a case alleging assault in a blood draw that "[i]t is important to note that appellee had the initial burden to produce evidence to support a finding that she did not consent to . . . [the] blood draw"). Once a defendant establishes there was no warrant, the burden shifts to the State to prove the warrantless search was reasonable under the totality of the circumstances. *Amador*, 221 S.W.3d at 672–73. The State satisfies this burden if it proves an exception to the warrant requirement. *See Gutierrez*, 221 S.W.3d at 685.

"Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." *McNeely*, 133 S.Ct. at 1563. In *Schmerber*, the United States Supreme Court held that the evidence showed that the police officer reasonably believed that an emergency existed because the delay in seeking or obtaining a warrant would result in the destruction of evidence. *Schmerber*, 384 U.S. at 770. The court relied on evidence in the record that the alcohol in the blood dissipates and stated,

> Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest.

*Id.* at 770–71. In *McNeely*, the United States Supreme Court stated that in *Schmerber* it had determined that the warrantless blood test was reasonable after considering all of the facts and particular circumstances in that case and its analysis "fits comfortably within [its]

7

case law applying the exigent circumstances exception" to the warrant requirement. *McNeely*, 133 S.Ct. at 1560.

In *McNeely*, the State argued that "whenever an officer has probable cause" that an individual is driving under the influence of alcohol there are exigent circumstances because blood alcohol evidence is inherently evanescent. *Id.* And, "[a]s a result, . . . so long as the officer has probable cause and the blood test is conducted in a reasonable manner, it is categorically reasonable for law enforcement to obtain the blood sample without a warrant." *Id.* The *McNeely* court rejected the State's argument and held that "[i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Id.* at 1561. The *McNeely* court explained

> We do not doubt that some circumstances will make obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test. That, however, is a reason to decide each case on its facts, as we did in *Schmerber*, not to accept the 'considerable overgeneralization' that a per se rule would reflect.

*Id.*

Section 724.012 of the Texas Transportation Code states in pertinent part that "[a] peace officer shall require the taking of a specimen of the person's breath or blood under any of the [listed] circumstances *if the officer arrests the person for an offense under Chapter 49, Penal Code*, involving the operation of a motor vehicle or a watercraft *and the person refuses the officer's request* to submit to the taking of a specimen voluntarily." TEX. TRANSP. CODE ANN. § 724.012 (emphasis added). The applicable subsection states that an officer must take the person's blood if "the person was the operator of a motor

8

vehicle or a watercraft involved in an accident that the officer reasonably believes occurred as a result of the offense and, at the time of the arrest, the officer reasonably believes that as a direct result of the accident" either "any individual has died or will die," "an individual other than the person has suffered serious bodily injury" or "an individual other than the person has suffered bodily injury and been transported to a hospital or other medical facility for medical treatment." *Id.* § 724.012(b)(1).

### III. EXCEPTIONS TO THE WARRANT REQUIREMENT

#### A. Section 724.012

The State contends that section 724.012 is an exception to the constitutional warrant requirement. Specifically, the State argues that "[t]he exigent circumstances or 'special facts' [as required by *McNeely*] are carved out in the mandatory blood draw statute . . . ."

This Court has already determined that the Legislature did not mean to circumvent the Fourth Amendment's requirement that the police officer acquire a warrant prior to acquiring a blood sample after the suspect refuses to provide a specimen regarding another portion of the mandatory blood draw statute. *See State v. Villarreal*, No. 13–13–00253–CR, __ S.W.3d __, __, 2014 WL 1257150, at *11 (Tex. App.—Corpus Christi Jan. 23, 2014, pet. granted). The court of criminal appeals affirmed our decision stating, "the provisions in the Transportation Code do not, taken by themselves, form a constitutionally valid alternative to the Fourth Amendment warrant requirement" and "a nonconsensual search of a DWI suspect's blood conducted pursuant to the mandatory-blood-draw and implied-consent provisions in the Transportation Code, when undertaken in the absence of a warrant or any applicable exception to the warrant requirement, violates the Fourth

9

Amendment." *State v. Villarreal*, No. PD–0306–14, 2014 WL 6734178, at **20–21 (Tex. Crim. App. Nov. 26, 2014, pet. granted).[2] Accordingly, we conclude that section 724.012 of the transportation code does not by itself form a constitutionally recognized exception to the warrant requirement. *See id.* Instead, under *McNeely*, each case must be evaluated on a case-by-case basis. *See McNeely*, 133 S.Ct. at 1560.

## B. Exigent Circumstances

The State argues that it provided evidence that exigent circumstances existed to obtain appellee's blood sample because it is imbedded in section 724.012. However, the State also points to facts in the record it alleges amounted to an exigency in this case. At trial, the State alleged to the trial court that exigent circumstances existed here stating the following:

> Your Honor, in this case we do have expert circumstances [sic], for example in Schmerber they mentioned that a crash, a child passenger, other complicating factors; such as multiple witnesses, multiple defendants, high number of arrests at the time of the incident, these can all be additional exigency factors that can lead to the conclusion that blood is—

The trial court interrupted the prosecutor and stated, "But the officer didn't have time to get a warrant. This officer never tried, never made an attempt." The State then argued that the trial court must look at the facts objectively to determine whether the police officer had enough time to get a warrant and that in this case getting a warrant would have taken too long. The trial court replied, "That's all based on some sort of general, what the normal case is and this sort of thing. The Supreme Court, as I read this case, is saying that that should be the exception, not the norm, that you need a warrant if you are going to get

---

[2] After affirming our decision, the court of criminal appeals granted the State's petition for rehearing. However, it has not vacated its decision affirming our decision.

somebody's blood" and here, "you can't use general facts to support a specific conclusion in this particular case." The trial court then pointed out that in this case, Officer Jordan did not even attempt to get a warrant "because he was relying on the mandatory statute. So the State is not going to have anything to support an emergency." These are the only arguments the State made to the trial court regarding exigent circumstances. Thus, any other arguments made on appeal by the State have not been preserved for our review.[3]

The State does not explicitly state on appeal that even if section 724.012 does not provide the required exigency alone, nonetheless, it established, based on the evidence presented, that an exigency existed. However, the State does point to evidence that arguably could have supported such a conclusion.[4] Thus, we will address the argument that there was an exigency that excused Officer Jordan from acquiring a warrant.

Exigency is an established exception to the warrant requirement and "applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *McNeely*,

---

[3] In its brief, the State maintains that there are other non-exigency based exceptions to the warrant requirement such as the automobile exception, and voluntary consent and waiver and other consideration such as "the underlying expectation of privacy as a factor" and "the nature of the privacy interest in blood" that "will be sufficient to sustain the constitutionality of [mandatory blood draw statutes], especially the Texas statute, which is narrowly drawn to include only the most egregious offenders and situations." However, although the State argued that the *McNeely* decision is very narrow, the State did not make any of the above-mentioned arguments to the trial court. Accordingly, we may not reverse the trial court on any of these grounds. *See State v. Rhinehart*, 333 S.W.3d 154, 162 (Tex. Crim. App. 2011) (stating, "ordinary rules of procedural default" apply to "losing party" in trial court); *Hailey v. State*, 87 S.W.3d 118, 121–22 (Tex. Crim. App. 2002) ("It is well-settled that . . . it violates ordinary notions of procedural default for a Court of Appeals to reverse a trial court's decision on a legal theory not presented to the trial court by the complaining party.") (quotations omitted); *State v. Mercado*, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998) (en banc) ("[I]n cases in which the State is the party appealing, the basic principle of appellate jurisprudence that points not argued at trial are deemed to be waived applies equally to the State and the defense."); *see also Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002) ("And so it is that appellate courts may uphold a trial court's ruling on any legal theory or basis applicable to the case, but usually may not reverse a trial court's ruling on any theory or basis that might have been applicable to the case, but was not raised.").

[4] At oral argument, the State argued that it established that exigent circumstances existed.

11

133 S.Ct. at 1558 (quoting *Kentucky v. King*, __ U.S. __, __, 131 S.Ct. 1849, 1856 (2011)). We must look to the totality of the circumstances in determining if the warrantless search was permissible due to an exigency. *Id.* at 1559. We agree with *Dounds v. State* that "in order to establish a plausible justification for an exigent circumstances exception to the warrant requirement, the State had the burden to show facts and circumstances beyond the passage of time and the resulting dissipation of alcohol in the bloodstream." 434 S.W.3d 842, 851 (Tex. App.—Houston [14th Dist.] 2014, pet. granted).

Here, the trial court specifically found that Officer Jordan said he did not rely on any emergency or exigency to obtain appellee's blood sample and instead Officer Jordan only relied on section 724.012 to obtain appellee's blood sample. We must give this historical fact finding almost total deference because as further explained below, it is supported by the record. *See Amador*, 221 S.W.3d at 673. Thus, similar to *Villarreal*, the trial court found that Officer Jordan's only basis for drawing appellee's blood without first obtaining a warrant was that section 724.012 required him to take a blood sample without appellee's consent and without the necessity of getting a warrant. *See Villarreal*, 2014 WL 1257150, at *11.

This finding is supported by the record. At the suppression hearing, Officer Jordan continuously claimed that his sole basis for the warrantless blood draw was section 724.012. On cross-examination by appellee's trial counsel the following exchange occurred:

| Defense Counsel: | All right. So the urgency then was for clearing the scene as opposed to anything else? |
|---|---|
| Officer Jordan: | No. It was for making sure everybody was treated and clearing the scene. Making sure the people who |

12

| | |
|---|---|
| | needed to go to the hospital went to the hospital and then clearing the intersection. |
| Defense Counsel: | So, were those two urgencies, clearing the intersection and making sure everybody who needed treatment got treatment? |
| Officer Jordan: | That's right. |
| Defense Counsel: | Was there any urgency regarding the obtaining of a warrant? |
| Officer Jordan: | Not at that time. |
| Defense Counsel: | Well, when you say not at that time, did it ever become a time when there was some urgency about obtaining a warrant? |
| Officer Jordan: | A blood warrant? |
| Defense Counsel: | Yes, sir. |
| Officer Jordan: | No. |
| Defense Counsel: | Was a blood warrant ever discussed? |
| Officer Jordan: | No, it was not. |
| Defense Counsel: | Had it been discussed, was there enough people there to accomplish getting a blood warrant? |
| Officer Jordan: | I'm not sure. |

Later in his testimony, Officer Jordan said, "[T]he warrant never came up." Defense counsel asked, "There was never any discussion with [his superior] Lieutenant McClure, listen, we should get a warrant but we don't have enough time." Officer Jordan replied, "Right" and agreed "That never happened." The evidence showed that Officer Jordan did not attempt to acquire a warrant, and although officers who were present at the scene had informed Officer Jordan that appellee may have been intoxicated, there was no evidence that anyone attempted to acquire a warrant.

13

In addition, Officer Jordan testified that he did not transport appellee to the hospital. Given that Officer Jordan stated that he was not concerned with obtaining a warrant and that the evidence showed that he did not transport appellee to the hospital, we conclude that the trial court's finding is supported by the evidence. Moreover, the United States Supreme Court has stated that if an officer can take steps to secure a warrant while the suspect is being transported to a hospital by another officer, there would be no plausible justification for an exception to the warrant requirement. *McNeely*, 133 S.Ct. at 1561. Here, there is no evidence that Officer Jordan could not have taken steps to obtain a warrant because he never even considered obtaining one.[5] *See Weems v. State*, 434 S.W.3d 655, 666 (Tex. App.—San Antonio 2014, pet. granted) (finding no exigency despite evidence that there had been an accident, the passenger had been injured, and the defendant had been transported to the hospital and noting that the officer had made no effort to obtain a warrant). Accordingly, we conclude that the trial court did not abuse its discretion by concluding that the State failed to establish that an exigency existed.[6] We overrule the State's issue to the extent that it argues an exigency existed in this case.

## C.     Section 724.011's Implied Consent

---

[5] To the extent that the State may argue that Officer Doug McDonald's testimony supports that exigent circumstances existed in this case, we disagree because Officer McDonald stated he had no knowledge whether the issue of acquiring a warrant was ever discussed and that "he did not handle any part of the DWI investigation" and was "strictly [assigned] to the traffic accident." Thus, he had no knowledge regarding whether Officer Jordan could have taken steps to obtain a warrant, and Officer Jordan did not testify that he could not have taken those steps. To the extent that the State relies on Officer Gary Williams's testimony, he agreed that he had nothing to do with this particular case and that he did not know anything about it.

[6] At oral argument, the State argued that Officer Jordan did not possess probable cause to obtain a warrant at the scene of the accident even though other police officers told him appellee may have been intoxicated. However, at the suppression hearing, the State made no such argument.

14

Citing section 724.011 of the Texas Transportation Code, the State argues that pursuant to "the implied consent statute," a person is deemed to have consented to the taking of one or more specimens of the person's blood for analysis to determine its alcohol content if that person is intoxicated and "is arrested for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle in a public place." *See* TEX. TRANSP. CODE ANN. § 724.011 (West, Westlaw through 2013 3d C.S.). The State asserts that anyone who operates a motor vehicle has impliedly consented to a blood draw.

Regarding implied consent, at the suppression hearing, the prosecutor stated:

Consent can be either [explicit] or implied. In this case, we did develop some testimony, I believe from Officer Jordan, that he specifically asked for consent and nothing was said. He instructed the nurse to go ahead and take a blood sample, there was no indication that Mr.—the defendant in this case, the suspect, refused or in anyway state[d] he refused to consent. Apparently I don't know if he stuck his arm out and allowed his arm to be punctured and a blood sample be taken. So we, you know, we would argue that's an implied consent.

. . . .

I think if you are going to look at whether consent occurred or not, Judge, you have to look at what a reasonable person under the circumstances would have understood and would of [sic] done. He was asked to give consent,[7] he stood there mute and allowed a blood sample to be taken. Would a reasonable person have said no? Would a reasonable person have started to take the blood or started to attempt to swab his arm down, which would have been normal; would he have pulled back, and said no, I haven't given consent or I refuse consent?

Aside from that, assuming that consent was not affirmative to be given, which we think it may be a fact question. I just—if I may, I would like

---

[7] We note that Officer Jordan testified that he did not ask for consent for the blood draw because he was relying on section 724.012, which he believed mandates a blood draw when the suspect has been arrested for suspicion of driving while intoxicated and been involved in an accident where someone has suffered an injury. *See* TEX. TRANSP. CODE ANN. § 724.012 (West, Westlaw through 2013 3d C.S.). It appears from our review of the record that Officer Jordan believed that he could order the blood draw without asking for consent and without obtaining appellee's refusal to provide a specimen.

15

> to say I think they are also presuming a terrible situation here where they want to say there is a third option; which is simply to stand mute and neither consent nor refuse, in which case the statute doesn't allow, according to them, the statute doesn't allow you to take the draw at all.

Thus, the State's argument at the suppression hearing was that appellee's silence, among other things, amounted to implied consent. The trial court concluded that there was no consent and stated, "I think there has to be some sort of affirmative consent to say that somebody consented in that situation. So I would find that there is no consent."

At the suppression hearing, the State neither mentioned the implied consent statute it cites on appeal nor argued that appellee impliedly consented to the warrantless blood draw by driving on the roadway or obtaining a driver's license as it now argues. Thus, to the extent that the State now makes this argument, we conclude that it does not comport with its argument to the trial court. *See Bell v. State*, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996) (explaining that the grounds raised on appeal must comport with the objections made before the trial court). Moreover, we cannot reverse the trial court's judgment on grounds not presented to it. *See State v. Rhinehart*, 333 S.W.3d 154, 162 (Tex. Crim. App. 2011) (stating that "ordinary rules of procedural default" apply to "losing party" in trial court); *Hailey v. State*, 87 S.W.3d 118, 121–22 (Tex. Crim. App. 2002) ("It is well-settled that . . . it violates ordinary notions of procedural default for a Court of Appeals to reverse a trial court's decision on a legal theory not presented to the trial court by the complaining party.") (quotations omitted); *State v. Mercado*, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998) (en banc) ("[I]n cases in which the State is the party appealing, the basic principle of appellate jurisprudence that points not argued at trial are deemed to be waived applies equally to the State and the defense."). Thus, we overrule the State's issue to the

16

extent that it argues that "the implied consent statute" required that the trial court deny appellee's motion to suppress.

The State further argues in addressing the implied consent statute that appellee "remained mute during the reading of [a license suspension warning] and allowed the taking of his blood. Officer Jordan testified that no struggle ensued, no words were exchanged, and [appellee] offered his arm."[8] However, the State neither cites to appropriate authority nor provides any legal analysis concerning how these facts required the trial court to deny appellee's motion to suppress because implied consent served as an exception to the warrant requirement. *See* TEX. R. APP. P. 38.1(i). Thus, to the extent that the State attempted to argue that appellee impliedly consented and that his implied consent served as an exception to the warrant requirement, we conclude that this argument is inadequately briefed.[9] *See id.* Accordingly, we overrule the State's first issue to the extent that it argues that the trial court should have denied appellee's motion to suppress on the basis that appellee remained mute and "allowed" the taking of his blood sample.

## D. Refusal

As previously stated, once appellee established that his blood sample was obtained without a warrant, the burden shifted to the State to prove that an exception to

---

[8] Although on direct examination by the State, Officer Jordan agreed that appellee offered his arm, on cross-examination by defense counsel, Officer Jordan said that appellee "didn't physically go like, here you go" by offering his arm and Officer Jordan did not recall whether appellee moved his arm at all.

[9] When asked by appellee's trial counsel, "Did he consent to a specimen," Officer Jordan replied, "No, he didn't. . . . That's right. He didn't consent." When asked, "All right. We are clear on that, he did not consent . . . . And he didn't refuse," Officer Jordan said, "That's right." Officer Jordan agreed that "consent or refusal" were not "an issue in [his] mind." Later during his testimony Officer Jordan stated that the blood draw "was mandatory, I didn't give him a chance to agree."

17

the warrant requirement existed; here the State alleged that section 724.012 provided that exception. *See Gutierrez*, 221 S.W.3d at 685. At the suppression hearing, the State invoked section 724.012 as an exception to the warrant requirement and argued that Officer Jordan properly ordered the blood draw pursuant to that statute. Although we have already determined that section 724.012 is not by itself an exception to the warrant requirement, as has the court of criminal appeals, even assuming it is, we conclude that the trial court properly granted the motion to suppress as explained below on the basis that Officer Jordan failed to comply with section 724.012; thus, the State could not have established that it applied in this case.

At the suppression hearing, Officer Jordan admitted that he had not asked for appellee's permission to take the blood draw and that appellee had not consented or refused to provide a specimen. The prosecutor stated, "there was no indication that Mr.— the defendant in this case, the suspect, refused or in anyway state[d] he refused to consent," and "I think they are also presuming a terrible situation here where they want to say there is a third option; which is simply to stand mute and neither consent nor refuse. . . ." Thus, the State conceded and acknowledged to the trial court that appellee never refused to give a specimen to Officer Jordan. In response to the State's argument that appellee consented to the blood draw, appellee's trial counsel said, "And we certainly have no refusal if that were the case. . . ." The fact that Officer Jordan did not acquire appellee's refusal prior to taking the blood draw is undisputed, and the only evidence presented by the State establishes that there was no refusal to provide a specimen.

Section 724.012 requires that "*the person refuses the officer's request* to submit to the taking of a specimen voluntarily" prior to the mandatory blood draw. TEX. TRANSP.

18

CODE ANN. § 724.012 (emphasis added). Therefore, as a matter of law, Officer Jordan did not properly acquire appellee's blood sample pursuant to section 724.012. Accordingly, the trial court did not abuse its discretion by granting appellee's motion to suppress. *See Alford*, 400 S.W.3d at 929 ("Even if the trial court had limited its conclusion of law to a particular legal theory, an appellate court would not be required to defer to that theory under its de novo review."); *Armendariz*, 123 S.W.3d 401 at 403 (holding that this "rule holds true even if the trial court gave the wrong reason for its ruling."). We overrule the State's sole issue.

## IV.    CONCLUSION

We affirm the trial court's judgment.

/s/ Rogelio Valdez
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
18th day of June, 2015.

# APPENDIX 2.
# Electronic Docket Sheet.

# CASE:
# 13-13-00335-CR

**DATE FILED:**

07/03/2013

**CASE TYPE:**

MISCELLANEOUS/OTHER CRIMINAL INCLUDING MISDEMEANOR OR FELONY

**STYLE:**

THE STATE OF TEXAS

**V.:**

JAVIER RODRIGUEZ

**ORIG PROC:**

NO

**TRANSFER FROM:**

**TRANSFER IN:**

**TRANSFER CASE:**

**TRANSFER TO:**

**TRANSFER OUT:**

**PUB SERVICE:**

## APPELLATE BRIEFS

| DATE | EVENT TYPE | DESCRIPTION | DOCUMENT |
|------|-----------|-------------|----------|
| 09/17/2014 | ADDITIONAL AUTHORITIES FILED | APPELLEE | |

| DATE | EVENT TYPE | DESCRIPTION | DOCUMENT |
|------|-----------|-------------|----------|
| 09/17/2014 | ADDITIONAL AUTHORITIES FILED | APPELLANT | |
| 03/31/2014 | SUPPLEMENTAL BRIEF FILED | APPELLEE | SUPPLEMENTAL BRIEF   [ PDF/135 KB ] |
| 03/24/2014 | SUPPLEMENTAL BRIEF FILED | APPELLANT | BRIEF   [ PDF/74 KB ]<br>NOTICE   [ PDF/55 KB ] |
| 01/15/2014 | APPENDIX RECEIVED | APPELLEE | |
| 01/15/2014 | BRIEF RECEIVED - ORAL ARGUMENT REQUESTED | APPELLEE | NOTICE   [ PDF/56 KB ] |
| 01/15/2014 | BRIEF FILED - ORAL ARGUMENT REQUESTED | APPELLEE | BRIEF   [ PDF/138 KB ] |
| 12/09/2013 | LETTER BRIEF FILED | STATE | BRIEF   [ PDF/60 KB ] |
| 10/21/2013 | PETITION FOR WRIT OF MANDAMUS FILED | RELATOR | |
| 09/30/2013 | BRIEF FILED - ORAL ARGUMENT REQUESTED | APPELLANT | BRIEF   [ PDF/930 KB ]<br>NOTICE   [ PDF/55 KB ] |

**CASE EVENTS**

| DATE | EVENT TYPE | DESCRIPTION | DISPOSITION | DOCUMENT |
|------|-----------|-------------|-------------|----------|
| | | | | |

| DATE | EVENT TYPE | DESCRIPTION | DISPOSITION | DOCUMENT |
|------|-----------|-------------|-------------|----------|
| 06/23/2015 | LETTER ISSUED BY THE COURT | | | CORRECTED PAGE 9 [ PDF/34 KB ] NOTICE [ PDF/117 KB ] |
| 06/18/2015 | MEMORANDUM OPINION ISSUED | | AFFIRMED | JUDGMENT [ PDF/37 KB ] MEMORANDUM OPINION [ PDF/263 KB ] NOTICE [ PDF/114 KB ] |
| 09/17/2014 | SUBMITTED | | | |
| 09/17/2014 | ADDITIONAL AUTHORITIES FILED | APPELLEE | | |
| 09/17/2014 | ADDITIONAL AUTHORITIES FILED | APPELLANT | | |
| 08/07/2014 | SET FOR SUBMISSION ON ORAL ARGUMENT | CORPUS CHRISTI | | NOTICE [ PDF/104 KB ] |

| DATE | EVENT TYPE | DESCRIPTION | DISPOSITION | DOCUMENT |
|------|-----------|-------------|-------------|----------|
| 05/02/2014 | TELEPHONE INQUIRY TO OR FROM THE COURT | | | |
| 05/02/2014 | SUBMISSION CANCELLED | | | NOTICE [ PDF/93 KB ] |
| 04/14/2014 | SET FOR SUBMISSION ON ORAL ARGUMENT | CORPUS CHRISTI | | NOTICE [ PDF/104 KB ] |
| 03/31/2014 | SUPPLEMENTAL BRIEF FILED | APPELLEE | | SUPPLEMENTAL BRIEF [ PDF/135 KB ] |
| 03/24/2014 | SUPPLEMENTAL BRIEF FILED | APPELLANT | | BRIEF [ PDF/74 KB ] NOTICE [ PDF/55 KB ] |
| 02/27/2014 | SUBMISSION CANCELLED | CORPUS CHRISTI | | |
| 02/27/2014 | MOTION DISPOSED | JOINT - APPELLANT AND APPELLEE | GRANT MOTION | NOTICE [ PDF/65 KB ] |

| DATE | EVENT TYPE | DESCRIPTION | DISPOSITION | DOCUMENT |
|------|-----------|-------------|-------------|----------|
| 02/27/2014 | MOTION DISPOSED | JOINT - APPELLANT AND APPELLEE | GRANT MOTION | NOTICE [ PDF/55 KB ] |
| 02/21/2014 | MOTION TO POSTPONE ORAL ARGUMENT FILED | JOINT - APPELLANT AND APPELLEE | | |
| 02/21/2014 | MOTION FOR EXTENSION OF TIME TO FILE SUPPLEMENTAL BRIEF FILED | JOINT - APPELLANT AND APPELLEE | | |
| 02/14/2014 | ORDER ENTERED | | | ORDER PC [ PDF/99 KB ] NOTICE [ PDF/92 KB ] |
| 02/07/2014 | SET FOR SUBMISSION ON ORAL ARGUMENT | CORPUS CHRISTI | | NOTICE [ PDF/104 KB ] |
| 01/30/2014 | MOTION FOR LEAVE DISPOSED | APPELLEE | GRANT MOTION | NOTICE [ PDF/55 KB ] |

| DATE | EVENT TYPE | DESCRIPTION | DISPOSITION | DOCUMENT |
|------|-----------|-------------|-------------|----------|
| 01/17/2014 | MOTION FOR LEAVE FILED | APPELLEE | | |
| 01/15/2014 | BRIEF FILED - ORAL ARGUMENT REQUESTED | APPELLEE | | BRIEF<br>[ PDF/138 KB ] |
| 01/15/2014 | RECORD CHECKED IN | APPELLEE | | |
| 01/15/2014 | APPENDIX RECEIVED | APPELLEE | | |
| 01/15/2014 | BRIEF RECEIVED - ORAL ARGUMENT REQUESTED | APPELLEE | | NOTICE<br>[ PDF/56 KB ] |
| 01/13/2014 | RECORD CHECKED IN | | | |
| 01/03/2014 | RECORD CHECKED OUT | | | |
| 01/03/2014 | TELEPHONE INQUIRY TO OR FROM THE COURT | APPELLEE | | |
| 12/09/2013 | LETTER BRIEF FILED | STATE | | BRIEF<br>[ PDF/60 KB ] |
| 11/04/2013 | RECORD CHECKED OUT | APPELLEE | | |

| DATE | EVENT TYPE | DESCRIPTION | DISPOSITION | DOCUMENT |
|---|---|---|---|---|
| 11/01/2013 | MOTION DISPOSED | | | |
| 11/01/2013 | MOTION DISPOSED | | | |
| 10/21/2013 | PETITION FOR WRIT OF MANDAMUS FILED | RELATOR | | |
| 10/15/2013 | DOCUMENT FILED | STATE | | |
| 10/15/2013 | DOCUMENT FILED | STATE | | |
| 10/15/2013 | DOCUMENT FILED | STATE | | |
| 10/02/2013 | MOTION DISPOSED | APPELLANT | MOTION OR WRIT DENIED | NOTICE<br>[ PDF/54 KB ] |
| 09/30/2013 | CASE READY TO BE SET | | | |
| 09/30/2013 | BRIEF FILED - ORAL ARGUMENT REQUESTED | APPELLANT | | BRIEF<br>[ PDF/930 KB ]<br>NOTICE<br>[ PDF/55 KB ] |
| 09/30/2013 | RECORD CHECKED IN | STATE | | |
| 09/26/2013 | RESPONSE FILED | APPELLEE | | |

| DATE | EVENT TYPE | DESCRIPTION | DISPOSITION | DOCUMENT |
|------|-----------|-------------|-------------|----------|
| 09/25/2013 | RECORD CHECKED OUT | STATE | | |
| 09/11/2013 | RESPONSE REQUESTED BY THE COURT | | | |
| 09/05/2013 | MOTION FOR EXTENSION OF TIME TO FILE BRIEF DISPOSED | APPELLANT | MOTION OR WRIT GRANTED | |
| 08/27/2013 | MOTION FILED | APPELLANT | | |
| 08/27/2013 | MOTION FOR EXTENSION OF TIME TO FILE BRIEF FILED | APPELLANT | | |
| 08/22/2013 | MOTION TO ABATE APPEAL DISPOSED | APPELLANT | MOTION OR WRIT DENIED | |
| 08/15/2013 | RESPONSE FILED | APPELLANT | | |
| 08/14/2013 | RESPONSE FILED | APPELLEE | | |
| 08/06/2013 | MOTION TO ABATE APPEAL FILED | APPELLANT | | |
| 07/31/2013 | CLERKS RECORD FILED | | | |

| DATE | EVENT TYPE | DESCRIPTION | DISPOSITION | DOCUMENT |
|------|-----------|-------------|-------------|----------|
| 07/30/2013 | EXTENSION OF TIME TO FILE CLERKS RECORD DISPOSED | DISTRICT CLERK | GRANT MOTION | |
| 07/30/2013 | EXTENSION OF TIME TO FILE CLERKS RECORD FILED | DISTRICT CLERK | | |
| 07/23/2013 | REPORTERS RECORD FILED | | | |
| 07/23/2013 | REPORTERS RECORD RECEIVED NOT FILED | | | |
| 07/15/2013 | DOCKETING STATEMENT FILED | APPELLANT | | |
| 07/03/2013 | NOTICE OF APPEAL FILED IN COURT OF APPEALS | APPELLANT | | |

**CALENDARS**

| SET DATE | CALENDAR TYPE | REASON SET |
|----------|---------------|------------|
| 07/06/2015 | STATUS | MOTION FOR REHEARING DUE |

**PARTIES**

| PARTY | PARTYTYPE | REPRESENTATIVE |
|-------|-----------|----------------|
| RODRIGUEZ, JAVIER | APPELLEE | HON. DONALD B. EDWARDS |
| THE STATE OF TEXAS | CRIMINAL - APPELLANT | HON. MICHAEL W. GORDON<br>HON. DOUGLAS K. NORMAN<br>HON. CLARISSA FERNANDEZ<br>HON. MARK SKURKA |

**TRIAL COURT INFORMATION**

**COURT:**

319TH DISTRICT COURT

**COUNTY:**

NUECES

**COURT JUDGE:**

HONORABLE THOMAS GREENWELL

**COURT CASE:**

11-CR-3843-G

**COURT REPORTER:**

**PUNISHMENT:**

# APPENDIX 3.
## Order Denying Motion to Reconsider.

October 2, 2013
Case No. 13-13-00335-CR
Style: THE STATE OF TEXAS
        v. JAVIER RODRIGUEZ

Appellant's motion to reconsider motion to abate and remand in the above cause was this day DENIED by this Court.

T.C. Case# 11-CR-3843-G                          DORIAN E. RAMIREZ, CLERK

                    CLARISSA FERNANDEZ
                    ASST. DISTRICT ATTORNEY
                    901 LEOPARD ST., ROOM 205
          MAIL TO:  CORPUS CHRISTI, TX  78401

October 2, 2013
Case No. 13-13-00335-CR
Style: THE STATE OF TEXAS
      v. JAVIER RODRIGUEZ

Appellant's motion to reconsider motion to abate and remand in the
above cause was this day DENIED by this Court.

T.C. Case# 11-CR-3843-G                               DORIAN E. RAMIREZ, CLERK

MAIL TO:

                   THE HONORABLE MARK SKURKA
                   DISTRICT ATTORNEY
                   901 LEOPARD STREET, ROOM 205
                   CORPUS CHRISTI, TX 78401

FILE COPY

October 2, 2013
Case No. 13-13-00335-CR
Style: THE STATE OF TEXAS
        v. JAVIER RODRIGUEZ

Appellant's motion to reconsider motion to abate and remand in the
above cause was this day DENIED by this Court.

T.C. Case# 11-CR-3843-G                           DORIAN E. RAMIREZ, CLERK

                          DONALD B. EDWARDS
                          ATTORNEY AT LAW
                          P.O. BOX 3302
              MAIL TO:    CORPUS CHRISTI, TX  78463-3302